UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE CO., <br><br>                                    Plaintiff, <br><br> v. <br><br> GWENDOLYN KAY LEICH-BRANNAN, et al., <br><br>                                    Defendant. | Action No. 3:09–CV–572 |

OPINION

I.  INTRODUCTION

THIS MATTER is before the Court on defendant Julius K. Leich's ("Julius") Motion to Dismiss (Doc. No. 4) plaintiff Metropolitan Life Insurance Company's ("Metlife") Complaint for Declaratory Judgment.  For the reasons state below, the Motion is denied.

II.  BACKGROUND

This matter is before the Court on a motion to dismiss, thus all allegations of fact are taken as true and all reasonable inferences are drawn in favor of the Plaintiff.  See Ashcroft v. Iqbal, __U.S.__, 129 S.Ct. 1937, 1949 (2009).  However, the Court shall reach its own judgments as to conclusions of law.  See id.  To the extent either party has challenged the factual allegations on which jurisdiction could be based, these allegations are

considered in the context of the arguments which raise them.  See, e.g., Roe 1 v. Prince William County, 525 F.Supp.2d 799, 803 (E.D.Va. 2007) citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).

### A.  Facts Underlying Metlife's Complaint

This case involves potentially adverse claims to a life insurance plan ("the Plan") established by decedent Adolph Julius Leich ("the Decedent") and for which Metlife was the claims fiduciary under the Employee Retirement Security Income Act ("ERISA"), 29 U.S.C. § 1001 et seq.. (Comp., ¶ 10.)  The Plan's governing documents state that "your life insurance will be paid to the beneficiary you name on your beneficiary designation form.  You may change your beneficiary at any time by completing the proper form and submitting [sic] to the Benefit Service Center." (Comp., ¶ 13.)  When the Decedent died in 2008, $54,800.00 in benefits became payable under the Plan.  (Comp., ¶¶ 18 & 19.)

In 1984, the Decedent entered into a Property Settlement Agreement ("the Agreement") with Patricia A. Leich ("Patricia"), and this was later incorporated into the judgment dissolving their marriage ("the Judgment").  (Comp., ¶ 14.)  The Agreement stated, in relevant part, that "[t]he Husband agrees to make the Wife his irrevocable beneficiary on all of his personal and group life insurance, to maintain all such insurance in force and to produce proof of such irrevocability for the Wife." (Comp., ¶ 15.)  On July 16, 1984, the Decedent completed a beneficiary designation form naming Patricia as the primary beneficiary of the life insurance benefits payable under the Plan.  (Comp., ¶ 16.)  However, in 1987, the Decedent completed another

beneficiary designation form, this time naming his wife Lois A. Leich ("Lois"), and two children, Julius and Gwendolyn Kay Leich-Brannan ("Gwendolyn"), as primary beneficiaries of the Plan. (Comp., ¶ 17.)

In November 2008, defendants Lois, Julius, and Gwendolyn submitted claims to Metlife requesting payment of the Plan benefits. (Comp., ¶ 20.) Metlife, which allegedly lacked knowledge of the 1984 beneficiary designation, made what it acknowledges may have been premature payments of these claims. (Comp., ¶ 21.) In March 2009, Patricia advised Metlife that the entire amount of the Plan benefits was improperly paid to Lois, Julius, and Gwendolyn, as she was the irrevocable beneficiary under the terms of the 1984 Judgment and Agreement. (Comp., ¶ 22.)

### B. Posture of Claim

On September 14, 2009, Metlife filed this Complaint, seeking a declaratory judgment as to which of the potential beneficiaries were entitled to the Plan benefits, and further orders transferring the benefits to the proper parties, discharging it from further liability, and awarding it fees and costs. (Comp., 5.) Metlife contends that as a claim fiduciary under ERISA, it has an obligation to ensure that the proper plan beneficiaries are paid and that it cannot fulfill this duty without a ruling on whether the 1984 Judgment and Agreement supercede ERISA's broad preemption of state law. (Comp., ¶¶ 12, 24-27.)

On October 27, 2009, Julius filed the instant Motion to Dismiss. Julius raises two basis for his Motion to Dismiss. First, he contends that this Court lacks subject matter jurisdiction over the Complaint and that it must be dismissed pursuant to

Federal Rule 12(b)(1).  (See Mot. Dis. 1.)  Second, he contends that Metlife has failed allege any basis on which the Court can grant the relief requested in the Complaint and that it must be dismissed pursuant to Federal Rule 12(b)(6).  (See Mot. Dis. 1.)[1]

## IV.  DISCUSSION

In order to resolve this Motion, the Court must answer two questions: First, do the rival claims of the defendants combine with Metlife's uncertainty to give rise to a case or controversy over which the Court may exercise its jurisdiction?  Second, are the allegations in Metlife's Complaint sufficient to entitle it to a declaratory judgment on the question?  While these two questions may be interrelated, the Court must first determine that it has jurisdiction over the matter before it can consider any other issues.  See Fed.R.Civ.P. 12(h)(3).

### A.  Grounds for this Court's Jurisdiction

Julius contends this Court lack's jurisdiction to hear Metlife's Complaint because Metlife has already paid the benefits due on the Plan, rendering the issue of whether the 1984 Judgment and Agreement constitute a QDRO moot and any ruling this Court might make on the question an advisory opinion.  (See Mem. Sup. Mot. Dis. 6.) When one party to a litigation challenges the basis of a court's jurisdiction, the party asserting jurisdiction carries the burden of proving it.  See Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).  Where a party has challenged the sufficiency of the

---

[1] Julius has also alleged that Metlife has failed to properly bring an action for interpleader under Federal Rule 22.  (See Mot. Dis. 2.)  As Metlife has stated before the Court that it does not seek interpleader, it is unnecessary to consider whether Metlife could proceed with an interpleader or an action "in the nature of interpleader".

allegations on which jurisdiction is based, a court must take all facts stated in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See cf. Roe 1 v. Prince William County, 525 F.Supp.2d 799, 803 (E.D.Va. 2007)(applying Rule 8 pleading standard in effect at the time.) Where a party has challenged the veracity of the allegations on which jurisdiction is based, a court may reach beyond the allegations in the complaint to determine whether jurisdiction exists. Id.

The jurisdiction of courts constituted under Article III of the United State is limited to actual "cases" or "controversies". See U.S. Const., Art. III, § 2, Cl. 1; Hayburn's Case, 2 U.S. 409 (1792). Thus, a dispute must be "definite and concrete, touching the legal relations of . . . parties having adverse legal interests", allowing "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of fact." Aetna Life Ins. Co. Of Hartford, Conn. V. Haworth, 300 U.S. 227, 240-41 (1937)(citations omitted). Among the forms of specific relief allowed under the United States Code is a declaratory judgment declaring the "rights and other legal relations of any interested party". 28 U.S.C. § 2201(a); see also, Fed.R.Civ.P. 57 (laying out procedure for seeking judgment).

In light of the forgoing, it is unnecessary to determine whether Julius has raised a facial challenge or a factual challenge (compare, Mem. Opp. Mot. Dis. 6 and Reply Sup. Mot. Dis. 4), as a basis for this Court's jurisdiction appears on the face of

5

y

the Complaint.[2] First, Metlife has alleged that it is an ERISA fiduciary and that it has an obligation to administer the Plan in accordance with the terms of the Plan documents and the statute. (Comp., ¶ 12.) Second, Metlife has alleged that multiple parties seek to receive full payment of a single benefit under the Plan. (Comp., ¶¶ 20-23.) Third, Metlife has alleged that it cannot fulfill its obligation to determine whom is the proper beneficiary of the plan without a determination as to the effect of the 1984 Judgment and Agreement under ERISA. (Comp., ¶ 25-27.) These allegations clearly show that the dispute between these parties is "definite and concrete" and touches the "legal relations" of the parties, some of whom are certain to have adverse interests.[3] See Haworth, 200 U.S. at 240-41. Further, the relief sought by Metlife is specifically authorized by statute. See 28 U.S.C. § 2201(a). Indeed, the purpose of the judgment Metlife seeks is to determine which party's interests it should be serving and to assist it in fulfilling its legal obligations to that party. Even if this Court ultimately concludes that Metlife paid the proper parties, its ruling

---

[2]To the extent that Julius' challenge is a factual one, a position he disclaims (see Reply Sup. Mot. Dis. 4), there is no evidence currently before the Court which suggests that the allegations of fact in Metlife's Complaint are not sufficiently credible to warrant this Court's exercise of jurisdiction.

[3] Under the statutory scheme established by ERISA, assets which fund these plans are placed in trust with a fiduciary who administers the plans for the benefits of the "participants and their beneficiaries" according to the terms of ERISA and the plan documents. See 29 U.S.C. §§ 1102-1104. Fiduciaries may be liable for waste or misuse of plan assets, see 29 U.S.C. § 1109, and they may also bring suit to "enjoin any act or practice which violates any provision of ERISA" or "to obtain other appropriate equitable relief" either to "redress such violations" or "to enforce any provision of ERISA or [a plan]", 29 U.S.C. § 1132(a)(3). Thus, if Metlife has paid out benefits improperly, it may be possible for it to bring suit against Julius and the other benefit recipients or for it to be sued by Patricia.

would not be an "opinion advising what the law would be upon a hypothetical state of facts". Id. As Metlife appears entitled to a declaratory judgment resolving its questions, as discussed below, the Court does not lack jurisdiction for want of a case or controversy.

### B. Availability of a Declaratory Judgment

Julius next contends that even if there is a present controversy and adverse parties, Metlife has failed to establish that a declaratory judgment is warranted. A declaratory judgment establishes the "rights and other legal relations of any interested party" where there is an "actual controversy within [a court's] jurisdiction". 28 U.S.C. § 2201(a); see also, Fed.R.Civ.P. 57 (laying out procedure for seeking judgment). A declaratory judgment is appropriate when "the judgment will serve a useful purpose in clarifying and settling the legal relations at issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." See Penn-America Ins. Co. v. Coffey, 368 F.3d 409, 412 (4th Cir. 2004). Such judgments have long been sought where a party's role in a dispute turns on the construction of an insurance agreement or policy. See id. (lower court had jurisdiction to determine whether insurer had obligation to defend suits); Anderson v. Aetna Life Ins. Co. Of Hartford, 89 F.2d 345, 347-48 (4th Cir. 1937)(jurisdiction to issue judgment when insurer's role in dispute turned on termination date of insurance coverage). But see Continental Cas. Co. v. Fuscardo, 35 F.3d 963, 965 (4th Cir. 1994) (court has discretion whether to exercise jurisdiction and may decline a request for "good cause", such as parallel state proceeding). A

7

declaratory judgment may be sought either before an action is commenced, see Coffey, 386 F.3d at 412; Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 324-25 (4th Cir. 1937)(resolving availability of certain defenses), or after a plaintiff has withdrawn the claim upon which an action was based.  See Employers Resource Management Co., Inc. v. James, 62 F.3d 627, 632 (4th Cir. 1995)(withdrawal of plaintiff's worker's compensation claim did not render statutory construction issue moot where other employees sought declaratory judgment).  Where a court determines a declaratory judgment is appropriate, it may also grant "further necessary or proper relief based on a declaratory judgment of decree".  28 U.S.C. §2202.  Since this Court considers Metlife's Complaint on a motion to dismiss for failure to state a claim, the question is not whether Metlife has paid benefits improperly, but whether, in light of the well pleaded factual allegations, Metlife's concerns are "plausible".  See Iqbal, 129 S.Ct. at 1949 ("plaintiff [must plead] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

In its Complaint, Metlife has alleged that multiple parties seek to collect the same benefits and that it is unable to determine how to administer the Plan as the terms of the 1984 Judgment and Agreement conflict with the express provisions of the Plan documents and the general provisions of ERISA.  (See Comp., ¶¶ 11-15, 24-25.)  As discussed above, it has also alleged that it has a legally cognizable interest in determining the proper beneficiary.  While the provisions of ERISA and ERISA plan documents generally preempt state laws or court decisions related to an employee benefit plan, see 29 U.S.C. §1144(a), in some situations a "qualified domestic

relations order" ("QDRO") may supercede contrary ERISA language, see §1056(d).[4] Whether the 1984 Judgment and Agreement constitute a QDRO is uncertain because ERISA draws a distinction between "employee welfare plans", which include life insurance, and "employee benefit plans", such as pensions. See 29 U.S.C. § 1002(1) &(2); see also Guidry v. Sheet Metal Workers Nat'l. Pension Fund, 493 U.S. 365, 371 (1990) (noting limits imposed on the later that were not imposed on the former). While QDROs are an exception to the alienation restrictions on employee benefit plans, employee welfare plans are not subject to similar restrictions and this has led to uncertainty regarding the ability of state court judgments resembling QDROs to limit the beneficiary choices of ERISA plan participants. Compare Met. Life. Ins., Co. v.Pettit, 164 F.3d 857, 862 ns. 5 & 7 (4th Cir. 1998) (suggesting that QDRO could restrict the assignment of insurance benefits), with Carland v. Metropolitan Life Ins. Co., 935 F.2d 1114 (10th Cir. 1991)(finding that QDROs had no effect on insurance benefits).

Julius has argued at length that the Fourth Circuit's previous comments regarding the applicability of QDROs in insurance contexts are either incorrect or mere dicta. (See Mem. Sup. Mot. Dis. 9-11.) Whatever the merits of these arguments may be, they only underline the fact that there is plausible "uncertainty, insecurity, and controversy" surrounding the question and suggest that a decision by this Court

---

[4]A QDRO is defined in the statute as an order which "creates or recognizes the existence of an alternative payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan" and which meets certain formal requirements. 29 U.S.C. § 1056(d)(3)(i).

would be useful in "clarifying and settling the legal relations at issue." <u>Coffey</u>, 368 F.3d at 412. As there are numerous precedents that have resolved similar insurance coverage issues through declaratory judgments, <u>see</u> <u>id.</u>; <u>Anderson</u>, 89 F.2d at 347; <u>Fuscardo</u>, 35 F.3d at 965, <u>Quarles</u>, 92 F.3d at 324-25; <u>James</u>, 62 F.3d at 632, it does not seem that Metlife has failed to allege a basis for a claim upon which relief can be granted.

## V. CONCLUSION

In light of the foregoing, it is the conclusion of the Court that the pending Motion should be dismissed and that Metlife's Complaint for a Declaratory Judgment should be allowed to proceed. An appropriate order will issue.

/s/

James R. Spencer
Chief United States District Judge

ENTERED this  14th  day of December, 2009